FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2015 SEP -2  PM 4: 41
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CR 113-117 |
| | * | |
| RICHARD LEE OWEN, II | * | |

### FINAL ORDER FOR RESTITUTION AND PRIORITY OF DISBURSEMENTS

On June 12, 2015, the Defendant in the captioned criminal case, Richard Lee Owen, II ("Owen"), was sentenced to a term of imprisonment and ordered to pay restitution pursuant to the terms of a judgment and commitment order dated June 16, 2015. The June 16th judgment contained the following provision: "The determination of the final restitution and disbursement order is deferred until a later date pursuant to 18 U.S.C. § 3664(d)(5). An *Amended Judgment in a Criminal Case* . . . will be entered after such determination."

On July 15, 2015, the presiding judge appointed James T. Wilson, Jr., of Augusta, Georgia, to audit available materials and information with the primary purpose of determining the extent of losses suffered but still unpaid to the individual client-victims of the Victor Hawk Law Firm ("VHLF") caused by the criminal conduct of this Defendant. Pursuant to the Order of Appointment, Mr. Wilson has conducted an audit consistent

with the Court's instructions and has submitted an interim report dated August 13, 2015, and a final report dated September 1, 2015. Mr. Wilson's reports further confirm the intricacies of Owen's efforts in wrongfully appropriating money from VHLF's trust fund and other sources, as well as his obfuscation and concealment of the enterprise.

At this juncture, even after Mr. Wilson's audit, the Court is unable to fashion a precise, albeit theoretical, schedule of restitution which would fairly apportion payments among individual client-victims, entities which have provided medical treatment or services to those client-victims, and VHLF. On this subject Mr. Wilson's final report is clear:

> I have tried to determine the amounts owed directly to client-victims of the Victor Hawk Law Firm (VHLF). I have not researched amounts owed to medical providers. The amount put in escrow and owed to medical providers is difficult if not impossible to determine. For example, the settlement statements might show $50,000.00 escrowed for medical expenses without a list of the entities to which the money was owed. This appears to be part of Mr. Owen's scheme. He would negotiate a low settlement with providers or refuse to pay them in order to create excess funds. He would sometimes pay the client the amount owed. Sometimes he wouldn't pay them at all or negotiate a reduced payment. He would then embezzle the excess funds by writing over payment amounts to the client, forge the client's name and deposit funds in Owen's account. To further conceal Owen's fraud, it appears that the firm's attorney fees were paid in full.

It is clear to the presiding judge that VHLF should not participate in restitution payments on the same priority or in

parity with their individual client-victims or the medical providers of those clients. On this subject, Mr. Wilson's report is instructive:

> Once again, the prospect of restitution payments from Mr. Owen seems remote. It is obvious to me that VHLF is jointly and severally liable to its clients for any sums rightfully owed but yet unpaid. The matter would be much more manageable, and restitution simplified, if VHLF paid its rightful obligations to these clients and then applied to the Court for restitution for the total amount embezzled by Owen.

In this regard, it appears to the Court with equal clarity that the medical providers to the individual client-victims are likely more sophisticated entities than the client-victims. The evidence at trial adduced from the client-victims is compelling in that regard. Because of Owen's cleverness and concealment in the conduct of his criminal endeavor and his manipulations between the accounts employed, the Court has concluded that any meaningful assessment of specific amounts owed to medical providers and fairly attributed to the accounts of various client-victims would be impossible upon information presently available. To do so would require a much more sophisticated financial audit and the likely conduct of several dozens of adversary proceedings consuming vast amounts of time and at great expense. Unfortunately, even such an audit would have the practical effect of producing nothing for the client-victims,

the medical providers, or VHLF. Reports from the United States Attorney at sentencing, coupled with the Court's experience in such matters, indicate that restitution coming from Owen is highly unlikely.

Accordingly, the Court is left to conclude that its final order of restitution and provisions for priority of payments must be confined to that which is practical and attainable after reasonable effort to audit and decipher available information. Further, the Court will not add to the confusion by making a partial or superficial effort to allocate amounts owed to medical providers in relation to the accounts of individual client-victims. Those questions may arise in proceedings between VHLF and medical providers who wish to pursue those issues. As Mr. Wilson points out in his September 1st report:

> The majority of the amounts embezzled were to go to the client victim's medical expenses and other expenses (not necessarily to the victim clients). The victims may still be liable for medical amounts. The various institutions could pursue any actions they deem necessary to try and recover funds, either from the law firm or the client-victims.

In this entire unfortunate matter the shocking reality is underscored by the final sentence in the first above-quoted paragraph from the Wilson report: "To further conceal Owen's fraud, it appears that the firm's attorney fees were paid in full." The Court is thus left with the very real and

4

disagreeable fact that many otherwise innocent, unsophisticated layman clients have settled personal injury claims upon the advice of a law firm, the judgment of which was infected by the presence and avarice of this resourceful defendant, the medical providers are yet unpaid in many instances, many clients have been cheated out of the fraction of the settlement to which they were originally entitled and **the law firm has been paid in full** (in most cases 1/3 of the gross amount recovered). Upon the foregoing, the best that the Court can do is:

(1) **ESTABLISH, DECLARE, AND ORDER** that restitution be paid to the client-victims as outlined in Exhibit "A" appended to Mr. Wilson's final report, and

(2) **ORDER AND DECLARE** that any and all restitution recoveries or payments received by the Clerk be distributed *pro rata* according to the amounts set forth in "Exhibit A" aforementioned, and that the priority of payments be established as follows:

(a) **First Priority:** Payments shall be made by the Clerk to the individual client-victims pro-rata until all are paid in full;

(b) **Second Priority:** That amounts recovered in excess of the first priority, if any, shall be paid over

5

to VHLF for distribution to medical providers of the individual client-victims.

(c) **Third Priority:** Any remaining amounts (not to exceed the aggregate sum of $594,730.88) shall be paid to VHLF to reimburse losses it has incurred in the matter.

Upon the foregoing, **IT IS HEREBY ORDERED** that the interim and final reports, respectively dated August 13, 2015, and September 1, 2015, submitted by James T. Wilson, Jr., are hereby **APPROVED**. **IT IS FURTHER ORDERED** that an amended judgment shall be prepared and entered directing the Clerk to make disbursements of any sums recovered or received by way of restitution in accordance with this Order. **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the amount of restitution required and established on page 5 of the original Judgment and Commitment Order, dated June 16, 2015, in the amount of $594,730.88 shall be and remain the total restitution and loss amount with respect to this case for all purposes of criminal sentencing. The effect of this Order is to establish the amount and priority of restitution owed to individual client-victims and shall not in any way alter, reduce, or enhance the total amount of restitution and losses calculated for the purpose of criminal sentencing herein. **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the approved reports submitted by

James T. Wilson, Jr., shall be lodged with the Clerk for purposes of inspection and copying as appropriate. However, the Clerk is not required to file those reports as a document in this case because of the voluminous and personal nature of the attachments.

**ORDER ENTERED** at Augusta, Georgia this 2nd day of September, 2015.

_____
UNITED STATES DISTRICT JUDGE